UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-128-H


VONDA CAMPBELL, *et al.*                                     PLAINTIFFS

v.

KY SPINE & REHAB, PSC, f/k/a
1st PHYSICIANS REHAB, INC., *et al.*                        DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

Five former employees of Kentucky Spine allege they were demoted and/or discharged for impermissible reasons. All assert they were discharged in retaliation for reporting or opposing sexual harassment in the workplace.[1] The present motion seeks dismissal of the alternative theories of two plaintiffs. Vonda Campbell claims Defendants terminated her for taking leave under the Family and Medical Leave Act ("FMLA"). Patricia Vignes claims she was demoted and/or terminated because of her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the Kentucky Civil Rights Act ("KCRA," K.R.S. § 344).

I.

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom,

---

[1] The first defendant is Kentucky Spine, formerly known as 1st Physicians Rehab, Inc. Defendant Physicians' Group of Sarasota, LLC, is potentially liable on an "alter ego" theory.

must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). On those issues for which it shoulders the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the nonmoving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis and citation omitted). For those issues on which the moving party will not have the burden of proof at trial, the movant must "point[] out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings, but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e).

## II.

Vonda Campbell ("Campbell") began working as an Office Coordinator in Kentucky Spine's Elizabethtown office in June 2008. In October 2008, she agreed to transfer to the Louisville office. Liz Pope served as Campbell's immediate supervisor.

On January 16, 2009, after arriving late to work 20 times in three months, Campbell received documented counseling regarding Defendants' attendance and punctuality policy and

was placed on three months of probation.  The probationary period apparently passed without incident.

On the evening of June 30, 2009, Campbell was hospitalized and underwent emergency surgery.  She requested and was retroactively approved for 12 full weeks of FMLA leave.

Campbell returned to work in mid-September 2009 in the position of Office Coordinator.  Campbell claims Pope began harassing her at this point.  At her yearly evaluation, Pope allegedly told Campbell that she was not a very good employee, did not work well with others, and came to work with uncombed hair and wrinkled scrubs.  Though Campbell claims she returned from leave fully capable of performing the duties of any clerical position, Campbell alleges Pope made "constant" comments about Campbell's getting work done in time (else get fired) and Pope's perception that Campbell was unable to do her job because of her health issues.  Campbell reported Pope's behavior to Human Resources officer Brenda Sibert and Pope's immediate supervisor, then-Team Leader Viktor Bunkovsky.

Campbell's issues with tardiness continued.  Bunkovsky emailed Campbell on November 25, 2009 to address the problem.  Sometime later, he flew up from Florida to meet with her.  At this meeting, Bunkovsky allegedly "threatened that while he could terminate [her] for lateness[,] nothing would be done if [she] would just be a team player and stop [her] complaints of harassment."  Campbell claims in her responsive briefing that after this meeting, she "fear[ed] for her job" and stopped complaining, but in her EEOC complaint, Campbell claimed she confronted Pope about the perceived harassment in February 2010.

In April 2010, after Campbell arrived late to work 23 times between January 17, 2010 and April 15, 2010, Assistant Team Leader Melissa Watkins terminated Campbell.  The termination documentation noted her lack of improvement in this area and recited the

disciplinary actions taken in January and November 2009. It also stated that Campbell was "in the negative" with unpaid hours, listing an amount of hours that included Campbell's unpaid FMLA time from summer 2009.

III.

Campbell says that Defendants terminated her in retaliation for taking FMLA leave. To survive summary judgment, Campbell must make a prima facie showing of the following elements: (1) she engaged in activity protected by the FMLA; (2) she suffered some adverse employment action; and (3) existence of a causal connection between the protected activity and the adverse action. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). Because Campbell attempts to establish retaliation solely through indirect, circumstantial evidence, the Court employs the familiar tripartite burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

As an initial matter, the only FMLA leave pertinent to Campbell's claim of retaliation is the leave approved for June 30 through September 21, 2009. Plaintiff claims that she was terminated in April 2010 right after missing three days for blood work related to the health issue from summer 2009 but has not established that she gave notice of the need for FMLA leave in April or that her employer should have known the days qualified as such.[2] The Sixth Circuit has said that "nothing in the statute places a duty on an employer to affirmatively grant leave without

---

[2] The Court does not read the following deposition testimony to indicate that Campbell requested FMLA leave in April 2010:

     Q: So you missed 3 days in April. Did you use vacation time? How did you take those days off?
     A: I don't recall if I had any vacation time. But I know I had at least a week left of my FMLA because I didn't take my full 12 weeks of FMLA because I knew I was going to have doctor's appointments after I returned.
     Q: Did you make a request for those 3 days?
     A: Yes. Yes, I did.
     Q: Who did you make that request to?
     A: To Melissa [Watkins].

such a request or notice by an employee.  Rather, to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for the leave." *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998) (internal citation omitted).  At the time of her termination, Campbell had not requested FMLA leave.[3]

### A.

Campbell has established the first two prongs of a prima facie case, but the causal connection between her FMLA leave and termination is a much closer call.

Campbell identifies the following as harassing conduct and asserts the mosaic of these events demonstrates a causal connection with her termination:

1.    Her alleged demotion while out on leave;

2.    Pope's email to coworkers referring to her health issues;

3.    Pope's explanation of why her promotion was being "taken";

4.    Pope's negative yearly evaluation of Campbell the week after she returned;

5.    Pope's "constant" comments threatening Campbell's job or insisting Campbell was unable to do the work her job required because of health issues;

6.    The "renewal" of complaints about Campbell's tardiness;

7.    Bunkovsky's threat to fire Campbell for tardiness unless she stopped complaining about Pope's alleged harassment; and

8.    Watkins's indirect reference to unpaid FMLA hours in Campbell's termination documentation.

The Court addresses this evidence sequentially.

---

[3] Though Campbell was under the impression she had FMLA leave left in April 2010, the official paperwork documenting her 2009 term of leave indicates that she was approved for a full twelve-week leave.  It also required Campbell to notify her employer "as soon as possible if the dates of [her] scheduled leave change or are extended." From the record, it appears Campbell returned to work on Friday, September 18, 2009.  Monday, September 21 would have been 12 full weeks of leave.  Depending on which of the four methods Kentucky Spine used to calculate the "12-month period" under the FMLA, *see* 29 C.F.R. § 825.200(b), Campbell might not have been entitled to any more leave in April 2010.  Campbell carries the burden of establishing that she was eligible for FMLA leave in April 2010.  This is a prerequisite to any FMLA claim.

First, there is no evidence bolstering Campbell's claim that she was promoted on June 30, 2009 from Office Coordinator to Office Manager and then demoted while out on leave. She claims that Liz Pope said "I don't think you will be able to keep up with the work because of your health issues" and told her "[W]e need to put somebody in that position until you are able to do that job." Pope circulated an email to the same effect, informing other employees "due to [Campbell's] health conditions, we need to place someone else in her position because we don't think she will be able to do the job." Nothing in these alleged statements indicates Campbell was promoted as Office *Manager*.

Second, although Pope's statements and email acknowledging Campbell's health issue tangentially relate to Campbell's protected use of FMLA leave, they do not exhibit animus for it. Even from Campbell's description, it appears Pope planned to "replace" Campbell only temporarily. Contextualized by their timing, these comments evidence true concern for Campbell's health at best and Pope's propensity to "regard as" disabled people who have undergone surgery in the past at worst. They do not further a retaliatory termination theory.

Pope's negative evaluation of Campbell does not amount to harassment, retaliatory or otherwise. Campbell does not suggest that the comments in the yearly evaluation were unfounded, only that the timing and content were suspicious because "before I left for my family medical leave, I was the best employee." This subjective evaluation of her own job performance does not support Plaintiff's theory of retaliatory termination.

Plaintiff claims her employer renewed complaints about her tardiness only after she returned from FMLA leave. However, this is not a coincidence: Campbell continued to arrive to work late after returning from leave. Plaintiff's doubts about the stated reasons for Defendants'

conduct cannot create a material factual dispute. *See Roquemore v. Vanderbilt Univ. Med. Ctr.*, 2005 WL 1915829, at *1 (W.D. Tenn. 2005).

Next, Campbell says that the Team Leader flew up and threatened that she would be fired for repeated tardiness unless she ceased complaining about Liz Pope's behavior. This allegation is important to Campbell's claim because FMLA retaliation plaintiffs must prove retaliatory animus. *See Hunter v. Valley View Local Schools*, 579 F.3d 688 (6th Cir. 2008); *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). To be actionable, Defendants must have terminated Campbell in retaliation for her use of medical leave, or her opposition to Pope's harassment based on the same, not simply for being a "thorn" in Defendants' side.

Even construing the evidence in the light most favorable to Campbell, and drawing all reasonable inferences in her favor, no evidence supports that (a) Pope was behaving in a harassing manner directed to Campbell's use of FMLA; (b) Plaintiff reported Pope's comments as "retaliatory harassment"; or (c) Team Leader Bunkovsky knew of the nature of Campbell's complaints.

Finally, Campbell contends that her supervisor's inclusion of FMLA hours in the total number of unpaid hours listed in her termination papers helps infer a causal connection. The final two sentences of Defendants' termination letter read as follows: "You have also been spoken to about your unpaid time. You are in the negative -506.54, and this never improved." The reference to an unacceptable amount of unpaid hours which includes those categorized as FMLA does provide strong written evidence that Defendants considered Campbell's use of FMLA leave as a negative factor in terminating her, but this alone cannot establish a prima facie

case of retaliatory termination, especially in light of the considerable length of time between her return from FMLA and her termination and her problem with habitual tardiness.[4]

B.

Even assuming arguendo that Campbell has established a prima facie case of retaliation, Defendants have provided a legitimate, non-discriminatory reason for their action: Plaintiff's well-documented and persistent tardiness. This is an appropriate business reason that shifts the burden back to Plaintiff to show pretext. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

To establish pretext, a plaintiff is required to show evidence that: (1) the proffered reason has no basis in fact, (2) the reason did not actually motivate the plaintiff's discharge, or (3) the reason was insufficient to motivate the discharge. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds, Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).

Campbell argues that Defendant's explanation is not genuine. Campbell does not deny being tardy, but instead contends it was excused by an understanding between herself and Liz Pope. Though Campbell claims that this understanding was reduced to writing in an email, the Court has not seen it. Regardless, one former supervisor cannot orally alter the terms of an at-will employee's employment contract prospectively, thus, any "understanding" between Pope and Campbell does not suffice to establish pretext.

---

[4] Importantly, Plaintiff has not made an interference claim. "The Act's prohibition against interference prohibits an employer from . . . us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." 29 C.F.R. 825.220(c). Defendants invited Campbell to clarify her position in their summary judgment briefing: "Campbell does not make any factual allegation of interference. . . . [T]he Defendants presume that Campbell is making a claim for retaliation under the FMLA." DN 45-1, p. 7. In her response, Plaintiff did not dispute this presumption and only used language referring to a retaliation claim. *See* DN 47, p.12. Accordingly, the Court finds that Plaintiff has abandoned any claim to FMLA relief on a theory of interference by failing to address this theory in responsive briefing. *See, e.g.*, *Dage v. Time Warner Cable*, 395 F.Supp.2d 668, 679 (S.D. Ohio 2005); *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F.Supp.2d 926, 931 n.7 (S.D. Ohio 2004).

8

Defendants' own documentation of the reasons for Campbell's termination references not only the reason Defendants now proffer as the legitimate, non-discriminatory reason for firing Campbell, but also the fact that Campbell's "unpaid hours" were too high—including the hours that comprised Campbell's stint of FMLA leave in the calculation. Defendants do not address the second stated reason. However, this alone does not suggest pretext.

Finally, if a jury finds Campbell to be a credible witness, it could conclude that Bunkovsky threatened precisely the tactic Defendants now adopt: reliance on Plaintiff's tardiness to justify her termination. This does not show pretext either. Defendants had plenty of reason to terminate Campbell for tardiness. Campbell's FMLA leave had ended eight months earlier but her tardiness had not. Defendants are entitled to summary judgment on Campbell's FMLA retaliation claim.

IV.

Patricia Vignes ("Vignes") began working for Defendants in July 2006 as Front Desk Coordinator. At all relevant times, she was over forty years old. She held various clerical positions over the years and was at some point the Office Manager of one of the Louisville locations.

In 2009, Liz Pope, Vignes's Team Leader and supervisor at the time, allegedly began making derogatory comments about Vigne's age. According to Vignes, Pope was then in her mid- to upper thirties. Pope made statements that Vignes was "too old," "could not do her job because she was too old," and that "she [Pope] needed to get rid of Vignes because she was getting way too old." Vignes elaborated in her deposition that although she willingly worked long hours—in her opinion, worked "circles around" co-employees—Pope would ask, "Aren't you getting tired[?] You are a little old. You are a little too old for this. Aren't you getting a

little tired?" Vignes also recalls Pope saying "maybe we should get you some help because you are getting older." According to Vignes, Pope went to her co-worker Vonda Campbell (whose FMLA claims are discussed above) and said "I want to start training you to take [Vignes's] place. I think that she is getting too old to work here. I think that she is failing in her work."

Around June 2010, Vignes complained about the age comments to Assistant Team Leader Melissa Watkins, Vignes's immediate supervisor at the time. Vignes alleges that Watkins reported the complaint to Viktor Bunkovsky, a former Team Leader, but nothing changed and the comments continued. Pope allegedly told Watkins around this point "she [Pope] would do what she had to do to get rid of Vignes."

At some point after June 2010, a meeting was held between Pope, Watkins (a co-plaintiff and Assistant Team Leader along with Pope), and Dr. LeBarre, Defendant Physicians' Group's Operations Manager. At this meeting, Pope allegedly told LeBarre that Vignes was "too old and could not do the work." Thereafter, LeBarre allegedly demoted Vignes.[5] In September 2010, Vignes complained to new Team Leader Melissa Santos ("Santos") that she was being retaliated against "because of her complaints regarding sexual comments and jokes and comments regarding her age."

On October 8, 2010, Santos terminated Vignes for cause. The termination documentation listed six separate performance problems: (1) failure to complete daily work and delegation of own work to other employees; (2) removing patient paperwork from one office on October 6, 2010 and having an employee in another office process it; (3) yelling at employees; (4) overscheduling patient appointments in dereliction of Doctors' orders; (5) not following general

---

[5] Vignes's complaint also details a demotion at an unspecified point in 2010, by an unspecified person, that occurred after she complained about Manny Urquilla's sexual comments and jokes. LeBarre allegedly demoted Vignes sometime after June but before September 2010. It is unclear whether Vignes is claiming two demotions or whether the demotion after her Urquilla complaint and the LeBarre demotion are one and the same.

direction from management; and (6) failure to complete a specific task assigned on September 10, 2010, then lying to management about it.

V.

Vignes claims she was "demoted and/or terminated" because of her age in violation of the Age Discrimination in Employment Act ("ADEA") and the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. "Claims brought under the KCRA are analyzed in the same manner as ADEA claims." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575-76 (6th Cir. 2012) (quoting *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008)); *accord Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) ("[Kentucky courts] consistently interpret[] the civil rights provisions of KRS Chapter 344 consistent with the applicable federal anti-discrimination laws.").

An ADEA plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009). In *Gross*, the Supreme Court focused on the general standard of liability under the ADEA and concluded that a mixed-motive jury instruction is never proper in an ADEA case: "[In ADEA cases], [t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 180. The Sixth Circuit has interpreted *Gross* as "overrul[ing] our ADEA precedent to the extent that cases applied Title VII's burden-shifting framework if the plaintiff produced direct evidence of age discrimination." *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). However, the court went on to state, "While *Gross* specifically rejected the burden-shifting framework for claims of direct evidence . . . the Supreme Court expressly declined to

decide whether the *McDonnell Douglas* test applies to the ADEA. . . . Consequently, we find that the *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence." *Id.* at 622.

### A.

Many of the comments Vignes considers discriminatory are not direct evidence of age discrimination because they are stray remarks unrelated to the decision-making process. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008). However, Vignes has produced evidence that Pope stated during a lunch meeting with LeBarre, directly after which LeBarre demoted Vignes, that Vignes was "too old and could not do the work [for her position]." Plaintiff Melissa Watkins, who was also present at the meeting, has said that LeBarre expressed agreement. This evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger*, 579 F.3d at 620 (internal citation omitted). However, to be actionable, the employer's action must be adverse. An adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's] employment." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc) (citation omitted). A bruised ego is not sufficient. *Id.* at 797. Vignes has not shown any change in salary, benefits, work hours, or responsibilities. *See e.g.*, *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). Leaving Vignes's subjective perception to the side, no positive evidence supports that she was, in fact, demoted. Defendants are therefore entitled to summary judgment on Vignes's demotion claim.

### B.

Vignes also claims age animus was the "but-for" cause of her termination. Defendants argue Vignes was fired for cause. Among other things, Vignes apparently lied to management

about her progress on an assigned task and removed confidential paperwork from a medical office.  Vignes does not rebut the truth of the allegations in her termination documentation but alleges that Defendants' reasons should not be given credence because Melissa Santos, Team Leader and ultimate decision-maker for Vignes's termination, was "close" and "thoroughly embroiled with things with Liz Pope," who had made discriminatory comments in the past, including telling Melissa Watkins that "she [Pope] would do what she had to do to get rid of Vignes."  In fact, Vignes was fired by Santos over the phone after Pope called Vignes into Pope's office to speak to Santos.  Whether through direct or circumstantial evidence, the proper focus of our inquiry at this juncture is whether Vignes could persuade a reasonable jury that age was the "but-for" cause of her termination.

The Sixth Circuit has held that an employer can be held liable for the animus of a supervisor who was not charged with making the ultimate employment decision.  *See Shazor v. Prof'l Transit Mgmt., Ltd.*, 2014 WL 627406, at *6 (6th Cir. Feb. 19, 2014) (citing *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1190 (2011)); *see also Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339 (6th Cir. 2012).  For Defendants to be liable for Pope's animus,[6] Vignes must establish that (1) Pope intended to cause an adverse employment action for discriminatory purposes; and (2) Pope's discriminatory actions were the proximate cause of Santos's decision to fire Vignes. *Staub v. Proctor Hosp.*, 131 S.Ct 1186, 1194 (2011).  An employer can overcome the second prong by showing that the ultimate decision maker undertook an investigation which resulted in the adverse action for reasons unrelated to the supervisor's biased actions.  *Id.* at 1193.

---

[6] It is unclear whether Pope still supervised Vignes at the time of her termination.  Nevertheless, in *Shazor* the Sixth Circuit left open the question of whether it will apply *Staub*, in particular cases, to the actions of employees who do not meet the definition of "supervisor" enunciated in *Vance v. Ball State Univ.*, 133 S.Ct. 2434 (2013).  *See Shazor*, 2014 WL 627406 at *7.  In light of this possibility, the Court will consider the hypothetical applicability of cat's paw liability to Vignes's claim.

Santos's written termination documentation effectively defeats the second prong. Santos listed six reasons for firing Vignes, none of which facially require "rel[iance] on facts provided by the biased supervisor—as is necessary in any case of cat's paw liability." *Staub*, 131 S.Ct. at 1193. In sum, Vignes cannot establish a discriminatory termination claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for partial summary judgment (DN 45) on Vonda Campbell's FMLA claim (Count III) is SUSTAINED.

IT IS FURTHER ORDERED that Defendants' motion for partial summary judgment (DN 45) on Patricia Diana Vignes's ADEA and KCRA claims (Counts X and XI) is SUSTAINED.

cc:     Counsel of Record